## Case No. 16,296.

UNITED STATES v. SIX FERMENTING TUBS.

[1 Abb. U. S. 268; 1 8 Int. Rev. Rec. 9; 1 Am. L. T. Rep. U. S. Cts. 126; 7 Am. Law Reg. (N. S.) 751.]

District Court, D. Wisconsin. April Term, 1868.

PROSECUTIONS FOR FORFEITURES—LIMITATIONS OF TIME—INTERNAL REVENUE LAWS.

1. The defendant, in an information to enforce a forfeiture under the internal revenue laws, may take advantage of the fact that the prosecution was not instituted within the time

limited by law for commencing it, under the general issue. He is not required to plead specially.

[Cited in U. S. v. Hodson, Case No. 15,376.]
[See U. S. v. Twenty-Five Barrels of Alcohol, Case No. 16,562.]

2. In general, where an action for the recovery of a penalty or a proceeding to enforce a forfeiture is pending at the time of the repeal of the statute imposing such penalty or forfeiture, or is instituted afterwards, the repeal is a bar to the action or proceeding, unless the repealing act contains a saving clause.

[Cited in U. S. v. Barr, Case No. 14,527.]

3. The internal revenue act of 1866 [14 Stat. 98], in repealing the act of 1864 [13 Stat. 233], contains a saving clause (section 70) which operates to preserve and continue demands which vested, and proceedings which were commenced under the act of 1864.

Motion to set aside a verdict against the defendant in an information for a breach of the revenue laws. The information in this case was filed against certain apparatus used in the distillation of spirits, in violation of the internal revenue law. It charged that the violations of law relied upon as a ground of forfeiture took place between September 3, 1864, and March 1, 1866. [Claimant sold, and removed from his distillery for consumption and use, fifty thousand gallons of spirits by him manufactured and distilled, without first paying the duties required by law, and without having the spirits gauged and inspected, or the casks branded.] 2 The claimant answered generally "that the said several articles and property seized did not, nor did any part thereof, become forfeited in the manner and form in the said information in that behalf alleged." Upon the trial of the issue, after evidence upon the question of forfeiture had been produced, the counsel for the claimant offered to prove that the facts relied upon to support the information were substantially brought to the knowledge of the collector and deputy collector of the district in the month of September, 1866, and a seizure of the same property in the distillery was then made, but was not prosecuted. The proof was offered for the purpose of taking advantage of the limitation prescribed in section 68 of the act of June 2, 1864 (13 Stat. 248), authorizing seizures. It provides "that such seizures shall be made within thirty days after the cause for the same shall have come to the knowledge of the collector, or deputy collector, and that proceedings to enforce said forfeiture shall have been commenced by such collector within twenty days after the seizure thereof." The evidence was objected to on the part of the prosecution, as not responsive to the information, and not evidence under the answer. The objection was overruled, and evidence admitted. The evidence showed an investigation of the affairs of the claimant, by the collector of his district, and a seizure of the distillery in September, 1866; a subsequent abandonment of that seizure;

1 [Reported by Benjamin Vaughan Abbott, Esq., and here reprinted by permission.]

2 [From 1 Am. Law T. Rep. U. S. Cts. 126.]

a further investigation by the collector, and a second seizure made in September, 1867, upon which the present information was filed within the twenty days allowed by law.

[A letter from the collector of the district to the commissioner of internal revenue, dated November 10, 1866, was read in evidence. It contained these statements: "The following facts have recently come to my knowledge in relation to the distillery of William Hodson, at Turtleville, in this district. From September, 1864, to February, 1866, Hodson made report of 25,200 gallons of spirits as having been manufactured and sold by him, upon which tax has been paid by him. It was suspected that his reports were not entirely reliable, and in May last Inspector Burpee commenced looking up facts, and as I believe has continued his investigation with diligence up to the present time. He ascertained that Hodson, by himself, or his sons, had made sales of distilled spirits at Janesville and Chicago to an amount considerably exceeding his report, and he thereupon wrote to United States Inspector H. F. Hopkins, of Illinois, to assist him in the matter and ascertain the amount of sales made by or through John H. Hodson, at Chicago. An examination showed that the amount of sales so made, between September, 1864, and February, 1866, was 96,000 gallons, being in excess of the amount 70,100 gallons. He ascertained further, that the distilled spirits were being or had been sent across the country from the distillery to Janesville at night fourteen miles, and that large quantities of spirits had been shipped from Janesville to Chicago by Charles W. Hodson, a son, to John R. Hodson, another son, under the head of sundries. Upon the above information Deputy Collector Capron accompanied by Inspector Burpee, and pretended revenue agent by the name of C. C. Cogswell, went to Turtleville on the 21st day of September last, and seized upon the distillery and its contents and surroundings, consisting of steam engines, boilers, &c. Ira P. Nye, special assistant assessor, being in charge of the same, was placed in charge of the property seized as keeper. Since then, Burpee has continued his investigations and reports to me that he has discovered the following facts in relation to the management of said distillery, which he says can be fully sustained by proof: 1,445 highwine casks have been ascertained to have been sent into the distillery, between the 3d day of September, '64 and the 27th of January, '66—1,345 were shipped by rail from Chicago, and 100 were manufactured for Hodson by Samuel Miller of Shopiere. Of those from Chicago, 598 were sent to Shopiere, in care of John R. Hodson, 100 were sent to Janesville to Wm. Hodson, and the balance to same place to Charles H. Hodson, and all of them were delivered to Hodson's teamsters and hauled away by him. 56,100 pounds of malt, sufficient to make 98,000 gallons of high wines

have been shipped from Chicago to Shopiere, the station nearest the distillery, to John R. Hodson during the time above stated. I have no personal knowledge of the foregoing facts, but report them to you as I received them from Inspector Burpee. It seems that something should be done in the matter." The commissioner replied under date of November 16, 1866, acknowledging the receipt of the letter of the collector, "relating to the case of William Hodson, charged with making false returns of spirits distilled, whose distillery and property therewith were seized in September last by Deputy Collector Capron." The commissioner then instructs as to further proceedings. That seizure was abandoned, and in pursuance of instructions from the commissioner, the assessor of the district, with the aid of Inspector Burpee, made enquiry into the returns of Hodson; between the times mentioned in the information, and after examination of witnesses and claimant, an assessment was made against him to a large amount. The affidavits taken before the assessor and the testimony at the trial correspond in substance with the contents of the above letter of the collector. The seizure on which this information is founded was made a day or two after the assessor concluded the inquiry, and this information was brought on the 14th of October, 1867, within twenty days after the seizure.] [3]

The jury found a verdict for the United States, which the claimant now moved to set aside, upon the ground that it was against the law and the evidence.

Smith & Carpenter, for the motion.
Lakin & Palmer, opposed.

MILLER, District Judge. The inquiry is in regard to the knowledge of the collector and deputy collector of the cause for seizure more than thirty days before this seizure was made. Knowledge of the cause for seizure means knowledge on the part of the officer of facts tending to establish a cause for seizure prescribed in the statute. Mere vague rumor or suspicion, or loose assertions of irresponsible persons, are not sufficient. It must consist of, or be founded upon, such facts communicated to or ascertained by the officer from reliable sources, as prima facie to establish a fraud upon the law.

The facts relied on in support of this information, and substantially upon which the verdict was rendered, were known to the collector and deputy collector, and to Inspector Burpee, who is the informer, in the fall of the year 1866, a year before this seizure was made. The evidence upon the subject of the statute limitation was submitted to the jury, together with all the evidence in the cause, with instructions upon the law of the case. The jury were charged that claimant can take advantage of the statute of limitation; and that the law requires

---

[3] [From 8 Int. Rev. Rec. 9.]

prompt action on the part of revenue offi-cers. [Claimant moved the court, to set aside the verdict against him, and for a new trial, upon the ground that it is against the law and the evidence.]4

After much reflection I should not feel justified in disturbing the verdict upon the merits. Finding the verdict upon the evidence, mostly circumstantial, was no abuse of the prerogative of the jury. The evidence was sufficient to bring the mind to the conclusion that the alleged cause of forfeiture was well founded. The impeached witnesses were sufficiently sustained and corroborated to authorize the jury in finding the verdict in part on their testimony. The means taken by claimant to procure counter-affidavits from those witnesses no doubt prejudiced his case with the jury.

I will confine this investigation to the subject of limitation allowed to be raised at the trial upon the pleadings. The answer is in the nature of a plea of the general issue. It is a general denial of the facts alleged in the information. In cases of seizure this mode of pleading is allowable. Conk. Prac. 590.5 Special pleadings in actions for penalties and forfeitures, or in criminal prosecutions, are almost entirely disused. A demurrer to an indictment is occasionally interposed. The general practice is either a motion to quash, or a motion in arrest, after a verdict of guilty. In criminal prosecutions, although a defendant may plead to the jurisdiction of the court, there are but few instances in which he is obliged to have recourse to such a plea. He may take advantage of the matter under the general issue. Archb. Cr. Pl. 80. In a case under the statute of 31 Eliz., which provides that all actions for any forfeiture upon any penal statute shall be brought within two years, the court held that the defendant may take advantage of the statute on the general issue, and need not plead it. Bull. N. P. 195. In Johnson v. U. S. [Case No. 7,418], the court did not permit the party indicted to take advantage upon habeas corpus of the limitation of indictments, where the objection had not been made of record by plea. In U. S. v. Ballard [Id. 14,507], the question of limitation was raised upon the date mentioned in the indictment, upon which the alleged perjury had been committed, and the act was held to bar the prosecution. In U. S. v. Mayo [Id. 15,755], there was a plea of the statute of limitation. But in Parsons v. Hunter [Id. 10,778], the same court declares in the opinion, that in suits on penal statutes, the statute of limitation need not be pleaded; but may be taken advantage of under the general issue. By section 32 of the crimes act of 1790 (1 Stat. 119) it is enacted, "that no person shall be prosecuted,

tried, or punished for treason or other capital offense, willful murder and forgery excepted, unless the indictment for the same shall be found by a grand jury within three years next after the treason or capital offense shall be committed; nor shall any person be prosecuted, tried, or punished for any offense not capital, unless the indictment for the same shall be found within two years from time of committing the offense; provided, that nothing herein contained shall extend to any person or persons fleeing from justice." By acts of congress, the period of limitation for the prosecution of any crime arising under the revenue law, and suits for fines and forfeitures, is five years.

Cases arising under the act limiting prosecutions have been presented to the consideration of courts under different forms of pleading. In U. S. v. Slacum [Case No. 16,-311], the limitation was specially pleaded. In U. S. v. Porter [Id. 16,072], the limitation was not pleaded. In U. S. v. Watkins [Id. 16,-649], the question was raised by demurrer. In U. S. v. White [Id. 16,676], it is decided that limitation may be given in evidence by the defendant under the general issue in a criminal cause, and the United States may give in evidence the fact that defendant fled from justice, and therefore was not entitled to the benefit of the limitation. In the opinion on page 82, the court remarks: "The court is bound to take notice that the defendant, upon the plea of not guilty, had a right to avail himself of the limitation of time, if he was entitled to it; and that the United States had a right to show that he was not entitled to its benefits. If, from accident or ignorance of his rights, the defendant should have been prevented from asserting or using his right, it might be ground of a motion for a new trial." In the case of Lee v. Clarke, 2 East, 333, 336, an action of debt for a penalty given by the game laws, upon the plea of nil debet, the verdict was for the plaintiff. Lord Ellenborough, during the argument, said: "That notwithstanding the allegation that the offense was committed within six calendar months, yet if it were not computed within the time prescribed by the statute, the plaintiff must have been nonsuited." Lawrence, J., remarked: "The time having elapsed would have been evidence for the defendant on the plea of nil debet." See, also, 1 Chit. Cr. Law, 471, 475, 626; Esp. Pen. St. 78.

The statute limitation seems to require that evidence of the time the officer obtained knowledge of the cause of forfeiture should be received under the general issue. It is an appropriate inquiry upon the trial of the cause. Proof on the subject might involve a more extended range than if the seizure were prohibited after or between certain dates. Seizure is an open and notorious

4 [From 8 Int. Rev. Rec. 9.]
5 [See Case No. 16,562.]

act on the part of the officer, known to the party in possession; but on what day or time the cause of seizure came to the knowledge of the officer may have to be ascertained from proof of several facts.

From this examination of the subject I am satisfied that the evidence was properly admitted, and that the verdict, under the instructions of the court upon this subject, should have been for claimant.

A question arises,—What effect the repeal of section 68 has on this case, if any? The information charges the offenses against the act to have been committed between September 3, 1864, and March 1, 1866. And the seizure is alleged to have been made on October 11, 1867, under and in pursuance of the act of June 30, 1864, and the acts amendatory thereof and supplementary thereto.

It is an established rule, that where an action for the recovery of a penalty, or a proceeding to enforce a forfeiture prescribed in a legislative act, is pending at the time of the repeal of the act, or instituted after the repeal. such repeal is a bar to the action or proceeding, in the absence of a saving clause in the repealing act. A clause of the repealing act provides that the repeal shall take effect on September 1, 1866. The act of March 3, 1865 (13 Stat. 472), continues in force section 68 of the act of 1864. These two last acts were in force at the time of claimant's operations in the distillery, and for six months thereafter. The act of July, 1866, repealing section 68, provides, in section 70, "that all the provisions of former acts repealed shall be in force for collecting all taxes, duties and licenses properly assessed, or liable to be assessed, or accruing under the provisions of acts, the right to which has already accrued, or which may hereafter accrue under said acts, and for maintaining and continuing liens, fines, penalties and forfeitures incurred under and by virtue thereof. and for carrying out and completing all proceedings which have been already commenced, or that may be commenced to enforce such fines, penalties, and forfeitures under said acts." It is, therefore, apparent that section 68 of the act of 1864 remains in force as to this case, including the proviso of limitation, notwithstanding the repeal. The distillery apparatus was subject to seizure as forfeited for offenses propounded in the information before the repeal affected the section in any manner; and the above provision of the repealing act reserves to the government the right to institute and prosecute these proceedings to enforce the forfeiture.

The court being satisfied that the seizure upon which this information is founded was not made within thirty days after the cause for the same had come to the knowledge of the collector and deputy collector, it is therefore ordered that the verdict be set aside and the information dismissed.